❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Several cell phones being stored at the North Central High<br>Intensity Drug Trafficking Area office located at 801 W.<br>Michigan Street, Milwaukee, WI, more fully described in<br>attachment a. | )<br>)<br>)  Case No.   22-857M(NJ)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location):*

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____ 3/9/22 _____ *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Nancy Joseph _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:   2/24/22 @ 3:09 pm _____     *Nancy Joseph*
                                                                                            *Judge's signature*

City and state:   Milwaukee, WI _____          Honorable Nancy Joseph, U.S. Magistrate Judge
                                                                                      *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The property to be searched includes:

    a. a black Alcatel flip style cellular phone, currently in evidence under Milwaukee Police Department Inventory No. 22005868, item No. 1 ("Device A");

    b. a green Motorola brand smart phone with white and purple ZIZO brand protective case, currently in evidence under Milwaukee Police Department Inventory No. 22005868, Item No. 2 ("Device B");

    c. a purple Motorola brand cellular phone with purple and white protective case, currently in evidence under Milwaukee Police Department Inventory No. 22005868l, Item No. 5 ("Device C");

    d. a purple LG brand smart phone with dual colored protective case, currently in evidence under Milwaukee Police Department Inventory No. 22005868, Item No. 6 ("Device D")

    e. a black Samsung brand cellular phone with a black protective case, currently in evidence under Milwaukee Police Department Inventory No. 22005868, Item No. 3 ("Device E");

    f. a blue Motorola brand smart phone with black protective case, currently in evidence under Milwaukee Police Department Inventory No. 22005868, Item No. 4 ("Device F");

All devices to be examined are currently being stored at the North Central High Intensity Drug Trafficking Area (HIDTA) office, located at 801 West Michigan Street, Milwaukee, Wisconsin. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

The particular things to be seized includes:

1.    All records on the Devices described in Attachment A that relate to violations of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Sections 922(g)(1) and 924(c) and involve Jerome Q. Hodges and others, including but not limited to:

    a.   preparatory steps taken in furtherance of these crimes;

    b.   any information related to firearms, drug trafficking, or obtaining, possessing or distributing any controlled substances;

    c.   any information about the use, possession, ownership, custody, or control of firearms;

    d.   any information about phone numbers associated with Jerome Q. Hodges;

    e.   any information about the use, possession, ownership, custody, or control of 5138 North 57th Street, Milwaukee, Wisconsin;

    f.   any information about Facebook profiles or other social media associated with Jerome Q. Hodges;

    g.   any information about Jerome Q. Hodges's schedule, travel, location, or whereabouts;

    h.   any information about the ownership, purchase, transfer, or possession of firearms;

    i.   any evidence about the scope, purpose, manner, means, acts in furtherance, and the identity of co-conspirators;

    j.   any information about the use of facilities of interstate commerce to traffic in controlled substances;

k. any information related to motive, intent, or knowledge of the violations described above.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of *(Briefly describe the property to be searched or identify the person by name and address)* Several cell phones being stored at the North Central High Intensity Drug Trafficking Area office located at 801 W. Michigan Street, Milwaukee, WI, more fully described in Attachment A. | ) ) ) ) ) ) Case No. 22-857M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 841,18 U.S.C. Sections 922(g) and 924(c) | Possession of controlled substances with intent to distribute, possession of a firearm as a prohibited person, and possession of a firearm in relation to a drug trafficking offense. |

The application is based on these facts:

See Attached Affidavit

❑ Continued on the attached sheet.

❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MICHAEL LOPEZ
Digitally signed by MICHAEL LOPEZ
Date: 2022.02.24 14:46:48 -06'00'

_____
*Applicant's signature*

TFO Michael Lopez, DEA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: __2/24/22__

_____
*Judge's signature*

City and state: __Milwaukee, WI__          Honorable Nancy Joseph, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER
## RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Michael Lopez, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am a Task Force Officer with the Drug Enforcement Administration (DEA), and have been so since March 2020. I am also a police officer with the Milwaukee Police Department and have been so employed since September 2000.

3.     As a part of my duties, I investigate criminal violations relating to narcotics trafficking offenses, including violations of Title 21, United States Code, Sections 841, 843, and 846, and federal firearms offenses, including violations of Title 18, United States Code, Sections 922(g), 924(a), and 924(c). In the course of my experience, I have and continue to be involved in investigations of criminal offenses and have assisted with search warrants for items related to gang investigations, organized crime, violent crime, firearms offenses, drug trafficking, thefts, counterfeit crimes, forgeries, including cellular telephones and other electronic telecommunication devices.

4.     I have had formal training in the investigation of drug trafficking. I have worked with numerous informants in the investigation of drug trafficking. I have participated in the execution of numerous search warrants in which controlled substances, firearms, drug paraphernalia, and counterfeit monies were seized.

5.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

6.      This affidavit is based upon my personal knowledge and upon information provided to me by other federal, state, and local law enforcement officers during the course of their official duties. Throughout this affidavit, I refer to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

7.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF DEVICES TO BE EXAMINED

8.      The property to be searched are the following (collectively, "Devices"):

    a.      a black Alcatel flip style cellular phone, currently in evidence under Milwaukee Police Department Inventory No. 22005868, item No. 1 ("Device A");

    b.      a green Motorola brand smart phone with white and purple ZIZO brand protective case, currently in evidence under Milwaukee Police Department Inventory No. 22005868, Item No. 2 ("Device B");

    c.      a purple Motorola brand cellular phone with purple and white protective case, currently in evidence under Milwaukee Police Department Inventory No. 22005868l, Item No. 5 ("Device C");

d.      a purple LG brand smart phone with dual colored protective case, currently in evidence under Milwaukee Police Department Inventory No. 22005868, Item No. 6 ("Device D")

e.      a black Samsung brand cellular phone with a black protective case, currently in evidence under Milwaukee Police Department Inventory No. 22005868, Item No. 3 ("Device E");

f.      a blue Motorola brand smart phone with black protective case, currently in evidence under Milwaukee Police Department Inventory No. 22005868, Item No. 4 ("Device F");

9.      All of the Devices are currently stored at the North Central High Intensity Drug Trafficking Area (HIDTA) office, located at 801 West Michigan Street, Milwaukee, Wisconsin.

10.     The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

11.     I am currently conducting an investigation into Jerome Q. Hodges (DOB: 11-24-86) for trafficking fentanyl and illegally possessing firearms in the Eastern District of Wisconsin.

12.     In February of 2022, a confidential informant, hereinafter referred to as CS, identified Jerome Q. Hodges as an individual who was selling heroin and cocaine in the Eastern District of Wisconsin while armed with a firearm.

## CONFIDENTIAL SOURCE

13.     A portion of this affidavit contains information provided by a confidential source. I believe the CS is credible because the CS has provided me with information regarding this investigation that I have been able to independently corroborate. The CS has also provided

information that has led to the issuance of at least (50) search warrants. I believe the CS is credible because I thoroughly debriefed the CS regarding other individuals who I am currently investigating and found the CS's information was accurate to the best of my knowledge. I believe the CS is credible because the CS has made statements to law enforcement against the CS's penal interest. I am also aware that the CS has at least two previous felony convictions and one misdemeanor conviction in the State of Wisconsin and that the CS provided information to law enforcement for monetary gain.

## BACKGROUND

14.     In February of 2022, the CS informed case agents that an individual who the CS identified as "Mike" was selling cocaine and heroin in the City of Milwaukee from his vehicle. The CS identified the subject's vehicle as a white sport utility vehicle, possibly a Toyota 4Runner. The CS stated he/she has known "Mike" for several years and knows "Mike" is always armed with a firearm. The CS stated when "Mike" sells from his vehicle, he conceals heroin, cocaine and at least (1) or (2) digital scales in a compartment near the center console. The CS stated he/she believes "Mike" lives near West Villard Avenue in the City of Milwaukee and sells drugs in the same area. The CS stated "Mike" utilizes cellular phone no. 414-892-0448 to conduct drug transactions.

15.     After case agents debriefed the CS, case agents canvassed the area of West Villard Avenue. On Wednesday, February 2, 2022, case agents observed a white, 2004, Nissan Xterra, bearing Wisconsin registration ALT-8918, parked in the driveway belonging to 5138 North 57th Street. Case agents know that the body style of a Toyota 4 Runner is similar to a Nissan Xterra.

16.     Case agents conducted a records check with the Department of Transportation that showed the Nissan Xterra was registered to Jerome Q. Hodges (DOB: 11-28-84), to 5138 North 57th Street, Milwaukee, WI.

17.     A search of law enforcement records showed Hodges was on Federal Probation in the Eastern District of Wisconsin for being a felon in possession of a firearm. Case agents spoke with United States Probation Agent Elizabeth Maeder who confirmed Hodges was on probation and provided a home address of 5138 North 57th Street.

18.     That case agents conducted follow up and learned that Department of Transportation records show Hodges's address as 5138 North 57th Street, Milwaukee, WI.

19.     That case agents showed the CS a Milwaukee Police Department booking photo of Hodges. The CS viewed the photo and positively identified Hodges as the person he/she knows as "Mike" and the same person who sells cocaine and heroin in the City of Milwaukee while armed with a firearm.

20.     Court records show that on June 24, 2011, Hodges was convicted of Possession of Marijuana, 2nd or Subsequent Offense, a class I felony under Milwaukee County Case No. 11CF1106. The conviction remains of record and un-reversed thereby prohibiting Hodges from possessing a firearm. Hodges was also recently convicted of possessing a firearm as a prohibited person in federal court in the Eastern District of Wisconsin, in Case No. 20-CR-177-PP. He is currently serving a sentence of probation for that conviction.

21.     After case agents identified Hodges, case agents conducted a controlled buy of heroin from Hodges utilizing the CS. Prior to the buy, case agents initiated surveillance of 5138 North 57th Street. Case agents observed Hodges leave 5138 North 57th Street in the Nissan Xterra and travel to a predetermined meet location to conduct the transaction with the CS. At the completion of the controlled buy, case agents observed Hodges travel back to 5138 North 57th Street. After the controlled buy, case agents debriefed the CS who stated he/she purchased a quantity of heroin from the CS while inside Hodges' Nissan Xterra. The CS subsequently turned

over the suspected heroin to case agents. The CS further stated that Hodges was armed with a firearm. The CS informed case agents the CS suspected the heroin was fentanyl or heroin cut with fentanyl.

22.    Cases agents subjected a sample of the suspected heroin to a Nark II Field Test. Case agents regularly used Nark II Field Tests to test controlled substances and find them to be accurate and reliable. The substance failed to test positive for heroin but did test positive for the presence of fentanyl.

## PREMISES SEARCH WARRANT AT 5138 NORTH 57TH STREET

23.    On February 11, 2022, the Honorable Barry Phillips, Court Commissioner for the First Judicial District of Wisconsin, authorized a residential premises search warrant for the property located 5138 North 57th Street, Milwaukee, WI.

24.    Prior to serving the search warrant, SA Curt Hansen coordinated with U.S. Probation and Pretrial services requesting Hodges report for an office appointment at the U.S. Probation and Parole Office located at 517 East Wisconsin Avenue, Milwaukee, WI. The appointment was scheduled for February 15, 2022, at 9:00 AM.

25.    On February 15, 2022, at 7:30 AM, I held an operational briefing at North Central HIDTA, located at 801 West Michigan Street. The purpose of the operational briefing was to coordinate the arrest of Hodges and subsequent entry of 5138 North 57th Street.

26.    At the completion of the briefing, case agents went to 5138 North 57th Street and initiated surveillance. Hodges's white Nissan Xterra bearing Wisconsin registration ALT-8918 was observed parked in the driveway of the residence. The Nissan was parked behind a silver Dodge Caravan bearing Wisconsin registration ALK-9505. A records check showed the Dodge Caravan was registered to Beatrice Jackson of 5138 North 57th Street, Milwaukee, WI.

27.     The arrest team parked on the west side of the street and a few houses to the north of the target residence so that case agents could be in position to make an arrest of Hodges.  TFO John Schott, SA Russell Dykema, SA Hansen and I were assigned to the arrest team.  TFO Schott and I were equipped with body cameras.

28.     At approximately 8:20 AM, I observed Hodges appear from the residence and open the driver's side door of the Nissan. TFO Schott advised members of the arrest team that he observed a firearm on Hodges's hip.  Hodges reached into the vehicle and subsequently walked back toward the residence out of my sight. A few minutes later Hodges re-appeared and entered the driver's side of the vehicle. This time Hodges was wearing a black hooded sweatshirt. It appeared Hodges started the Nissan because case agents could observe exhaust emanating from the Nissan's muffler. Hodges then exited the Nissan and walked back toward the residence.

29.     A few minutes later Hodges returned to the vehicle and entered the Nissan again. This time Hodges closed the driver's side door. At this moment the arrest team pulled behind the Nissan and activated the vehicle's emergency lights and initiated the audible siren to alert Hodges to the presence of law enforcement. SA Hansen, SA Dykema, and I exited our vehicle and approached the Nissan. SA Hansen and I approached the driver's side of the vehicle. SA Dykema approached the passenger side of the vehicle. While approaching the vehicle, SA Hansen yelled aloud numerous times "police don't move."  Once SA Hansen arrived at the driver's side door, SA Hansen ordered Hodges to "put your hands up."  SA Hansen was equipped with a ballistic shield with "POLICE" printed on the front.

30.     I approached the driver's door and opened it.  I subsequently ordered Hodges to exit the vehicle and grabbed him by his left arm to escort him from the vehicle. Hodges tensed up and refused to exit the vehicle. I advised Hodges to exit the vehicle and informed Hodges he was under

arrest. Hodges responded by saying "what for" and refused to exit the vehicle. I then observed Hodges move his right arm toward the right side of his body out of my sight. At the same time, I heard SA Dykema yell "gun."

31. Believing Hodges was going to retrieve a firearm and use it against the arrest team, I removed my service weapon from the holster and pointed it directly at Hodges's head. I advised Hodges not to move and that I would use deadly force. I used a verbal stun by telling Hodges "I will kill you." I observed that Hodges had placed his right hand up. I continued to advise Hodges not to move or I would use deadly force.

32. TFO Schott responded to assist me and escorted Hodges out of the vehicle and directed him to the ground. TFO Schott subsequently placed Hodges into custody. I changed my focus onto the target residence. SA Hansen, SA Dykema, and I subsequently moved to a stack formation on the southwest corner of the target house.

33. TFO Schott turned Hodges over to Sergeant Melissa Franckowiak. When Sgt. Franckowiak moved Hodges into a sitting position, Sgt. Franckowiak discovered Hodges was lying on a black Taurus G3c 9mm handgun (serial no. ACB520272). TFO Nick Stachula responded and recovered the Taurus. TFO Stachula secured the Taurus in his vehicle until the residence was secured. After the residence was secured TFO Stachula cleared the Taurus and recovered an unspent cartridge from the chamber and (12) unspent cartridges from the magazine.

34. Hodges was also in possession of $1,997 of U.S currency.

35. Case agents subsequently executed the search warrant. During a search of the residence case agents located the following items.

## THE FOLLOWING ITEMS WERE RECOVERED FROM THE KITCEN

36.     TFO Monteilh located a tan chunky substance packaged in a clear sandwich baggie in the 2nd left drawer from the sink along the north wall. TFO Monteilh later subjected a sample of the substance to MobileDetect which indicated a positive detection for the presence of fentanyl with a total weight of 2.43 grams. TFO Schott took possession of the fentanyl and inventoried it on Milwaukee Police inventory no. 22005709.

37.     TFO Monteilh located a white powdery substance packaged in a clear sandwich baggie in the 2nd left drawer from the sink along the north wall. TFO Monteilh later subjected a sample of the substance to MobileDetect which indicated a positive detection for the presence of cocaine with a total weight of 1.46 grams. TFO Schott took possession of the fentanyl and inventoried it on Milwaukee Police inventory no. 2005709.

38.     TFO Monteilh located a black digitZ brand digital scale in the 2nd left drawer from the sink along the north wall. TFO Monteilh later inventoried it on Milwaukee Police inventory no. 2005709.

## THE FOLLOWING ITEMS WERE LOCATED IN THE NORTHWEST BEDROOM

39.     TFO Stachula located a small black digital safe on the top shelf of the bedroom closet. The safe contained a black Remington R51 9mm handgun (serial no. H003159R51) and a black Springfield Armory XD .45 caliber handgun (XD761938). TFO Stachula recovered an unspent 9 mm cartridge from the chamber of the Remington and (6) unspent cartridges in the magazine. TFO Stachula located an unspent .45 caliber cartridge in the chamber of the Springfield and (10) unspent .45 caliber cartridges in the magazine.

40.     TFO Stachula located $4,481 of U.S. currency in the top dresser drawer of the dresser along the east wall and in a pink bag inside a plastic container in the closet.

41.     TFO Stachula located (9) items of mail belonging to Hodges in the top dresser drawer of the dresser along the south wall. TFO Monteilh later inventoried the mail on Milwaukee Police inventory no. 22005739.

42.     TFO Stachula located **"Device A,"** a black Alcatel flip style cellular phone on a ledge along the south wall. TFO Monteilh later inventoried it on Milwaukee Police inventory no. 22005868 as item no. 1. TFO Monteilh temporarily secured the cellular phone in the North Central HIDTA evidence room.

43.     I located **"Device B,"** a green Motorola brand smart phone with a white and purple ZIZO protective caser lying on the bed. TFO Monteilh later inventoried it on Milwaukee Police inventory no. 22005868 at item no. 2. TFO Monteilh temporarily secured the cellular phone in the North Central HIDTA evidence room.

44.     TFO Stachula located **"Device C,"** a purple Motorola brand smart phone with purple and white protective case on the east wall organizer. TFO Monteilh later inventoried it on Milwaukee Police inventory no. 22005868 as item no. 5. TFO Monteilh temporarily secured the cellular phone in the North Central HIDTA evidence room.

45.     TFO Stachula located **"Device D,"** a purple LG brand smart phone with a dual-colored protective case on the east wall organizer. TFO Monteilh later inventoried it on Milwaukee Police inventory no. 22005868 as item no. 6. TFO Monteilh temporarily secured the cellular phone in the North Central HIDTA evidence room.

### THE FOLLOWING ITEMS WERE LOCATED IN THE NISSAN XTERRA

46.     SA Nick Lancaster located (2) cellular phones on the front passenger seat. The cellular phones are identified as **"Device E,"** a black Samsung smart phone with a black cover and **"Device F,"** a blue Motorola smart phone with a black protective cover. TFO Monteilh later

inventoried them on Milwaukee Police inventory no. 22005868 as item no. 3 and item no. 4. TFO Monteilh temporarily secured the cellular phones in the North Central HIDTA evidence room.

47.     SA Nick Lancaster located a knotted sandwich baggie on the floor between the driver's door and driver's seat. The baggie contained a tan chunky substance. TFO Monteilh later subjected a sample to MobileDetect that had a positive detection for the presence of fentanyl with a total weight of 3.10 grams. TFO Monteilh inventoried the fentanyl on Milwaukee Police inventory no. 22005709.

## CUSTODIAL INTERVIEW

48.     On February 16, 2022, TFO Schott and I conducted an in-custody interview of Hodges. Hodges waived his Miranda Rights and agreed to make a statement. During the interview, Hodges admitted to possessing all (3) firearms seized during the execution of the search warrant. Hodges also admitted to possessing the fentanyl recovered from the Nissan and the fentanyl and cocaine seized from the residence. Hodges also admitted to selling fentanyl. Hodges would not give case agents consent to search the cellular phones recovered from the Nissan.

49.     All the devices described in this affidavit are currently in the lawful possession of the Drug Enforcement Administration. The Devices came into the DEA's possession in the following way: search incident to arrest and taken during the execution of a warrant. Therefore, while the DEA might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

50.     The Devices are currently in storage at the Milwaukee High Intensity Drug Trafficking Area (HIDTA), located at 801 West Michigan Street, Milwaukee, Wisconsin. In my training and experience, I know that the Devices have been stored in a manner in which its

contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the DEA.

## **TECHNICAL TERMS**

51.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.   Wireless telephone:   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.   Digital camera:   A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.   Digital cameras use a variety of fixed and removable storage media to store their recorded images.   Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.   Removable storage media include various types of flash memory cards or miniature hard drives.   Most digital cameras also include a screen for viewing the stored images.   This storage media can contain any digital data, including data unrelated to photographs or videos.

c.   Portable media player:   A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.   However, a portable media player can also store other digital data.   Some portable media players can use removable storage media.   Removable storage media include various types of flash memory cards or miniature hard drives.   This removable storage media can also store any digital data.   Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

52.  Based on my training, experience, and research, I know that some of the Devices have the capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, PDA, tablet, and the ability to access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

53.  I know that the proliferation of cellular devices in society has led to the increase in their use in and connection to criminal activity. The examination and analysis of data stored on electronic devices has become an important aid to law enforcement in the investigation of crime. In my training and experience, I am aware that electronic devices, such as cellphones, are used to store and save audio, video, photographs, communication records, and text files related to criminal activity. These electronic devices often contain evidence about the custody and control of those devices, along with location information about the device's whereabouts at the time of the crime. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

54.  I know from training and experience that individuals who commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media. In my training and experience, I have also found it common for those who possess firearms to take or possess photographs and other visual depictions of themselves, their associates, and the

illegal firearms that they control, possess, buy, and sell. These photographs and visual depictions are typically kept and maintained on the suspect's cellular devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

55.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

56.     There is probable cause to believe that things that were once stored on the Devices may still be stored there, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

57.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

    a.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    b.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    c.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    d.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

58. *Nature of examination*.   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

59. *Manner of execution.*   Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## <u>CONCLUSION</u>

60. Based on the facts set forth in this affidavit, there is probable cause to believe that Hodges has committed violations of Title 21, United States Code, Section 841 and Title 18, United States Code, Sections 922(g) and 924(c). I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

# ATTACHMENT A

The property to be searched includes:

    a. a black Alcatel flip style cellular phone, currently in evidence under Milwaukee Police Department Inventory No. 22005868, item No. 1 ("Device A");

    b. a green Motorola brand smart phone with white and purple ZIZO brand protective case, currently in evidence under Milwaukee Police Department Inventory No. 22005868, Item No. 2 ("Device B");

    c. a purple Motorola brand cellular phone with purple and white protective case, currently in evidence under Milwaukee Police Department Inventory No. 22005868l, Item No. 5 ("Device C");

    d. a purple LG brand smart phone with dual colored protective case, currently in evidence under Milwaukee Police Department Inventory No. 22005868, Item No. 6 ("Device D")

    e. a black Samsung brand cellular phone with a black protective case, currently in evidence under Milwaukee Police Department Inventory No. 22005868, Item No. 3 ("Device E");

    f. a blue Motorola brand smart phone with black protective case, currently in evidence under Milwaukee Police Department Inventory No. 22005868, Item No. 4 ("Device F");

All devices to be examined are currently being stored at the North Central High Intensity Drug Trafficking Area (HIDTA) office, located at 801 West Michigan Street, Milwaukee, Wisconsin. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

The particular things to be seized includes:

1.     All records on the Devices described in Attachment A that relate to violations of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Sections 922(g)(1) and 924(c) and involve Jerome Q. Hodges and others, including but not limited to:

    a.   preparatory steps taken in furtherance of these crimes;

    b.   any information related to firearms, drug trafficking, or obtaining, possessing or distributing any controlled substances;

    c.   any information about the use, possession, ownership, custody, or control of firearms;

    d.   any information about phone numbers associated with Jerome Q. Hodges;

    e.   any information about the use, possession, ownership, custody, or control of 5138 North 57th Street, Milwaukee, Wisconsin;

    f.   any information about Facebook profiles or other social media associated with Jerome Q. Hodges;

    g.   any information about Jerome Q. Hodges's schedule, travel, location, or whereabouts;

    h.   any information about the ownership, purchase, transfer, or possession of firearms;

    i.   any evidence about the scope, purpose, manner, means, acts in furtherance, and the identity of co-conspirators;

    j.   any information about the use of facilities of interstate commerce to traffic in controlled substances;

k. any information related to motive, intent, or knowledge of the violations described above.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.